### MASON J. OSGOOD, executor, *vs.* EDWARD M. BLISS & another.

Worcester. Sept. 29, 1885. — April 9, 1886. FIELD, C. ALLEN, & GARDNER, JJ., absent.

An unmarried woman executed a will ; and, on the same day, she and her intended husband entered into an ante-nuptial agreement, providing that she should retain absolute control of all her property after marriage ; that she should have full and unrestrained right to dispose of the same ; that, at her death, such property should descend according to the terms of a will executed prior to the marriage, free from all legal right of her husband ; and that the marriage should not work a revocation of the will, nor affect her right to alter the same during the marriage. On the next day, the parties to the agreement were married, and lived together until her death, no issue having been born of the marriage. *Held,* that the execution by the will of the power of appointment in the ante-nuptial agreement was not revoked by the marriage.

APPEAL, by Edward M. Bliss and Carrie F. Ormsby, from a decree of the Probate Court, admitting to probate the will of Elizabeth A. Heywood. The case was submitted, and reserved for the consideration of the full court, upon agreed facts, in substance as follows:

Elizabeth A. Heywood, being unmarried, and a resident of Indianapolis in the State of Indiana, on January 25, 1882, at said Indianapolis, duly executed the will offered for probate.

On the same day, said Elizabeth and Edward M. Bliss, a resident of Worcester, in this Commonwealth, at said Indianapolis, entered into the following agreement:

" This agreement, made and entered into this twenty-fifth day of January, 1882, between Elizabeth A. Heywood, of the city of Indianapolis and State of Indiana, and Edward M. Bliss, of Worcester in the State of Massachusetts, —

" Witnesseth, that, in consideration of the promise and agreement of said Elizabeth A. Heywood to marry the said Edward M. Bliss, and of the said Edward M. Bliss to marry the said Elizabeth A. Heywood, it is hereby mutually agreed and stipulated that the said Elizabeth A. Heywood shall own, possess, hold, and control absolutely all property which may belong to her at the time of such contemplated marriage, or which she may afterwards acquire in any manner, the same as if she were an unmarried person, free from all authority, right, or control of the said Edward M. Bliss; and shall have full and unrestrained right to dispose of the same; and at her death such property shall descend according to the terms and provisions of the will and testament of Elizabeth A. Heywood, free from all legal right of Edward M. Bliss as her husband.

" And it is further agreed that such marriage shall not work a revocation of the will and testament of Elizabeth A. Heywood, executed prior to said marriage, nor affect her right to alter or change the same during such marriage.

" In witness whereof, the said Elizabeth A. Heywood and Edward M. Bliss have hereunto set their hands and seals this twenty-fifth day of January, 1882."

The parties to said agreement were married on the next day after the agreement was executed, at Indianapolis, and immediately removed to Worcester, where they resided until the death of said Elizabeth, on March 15, 1884, no issue having been born of said marriage. Said Elizabeth had, in the mean time, made no other will, and no codicil to the one offered in this case.

Edward M. Bliss had no knowledge of the execution of said will, or of its contents or existence, until after the decease of

said Elizabeth, beyond the reference to a will contained in said agreement.

The will and agreement were left by the deceased, without the knowledge of said Edward M., in the hands of the appellee, at Indianapolis, at the time of their execution, and were never thereafter in her possession.

The appellant Edward M. Bliss is interested in the estate of said Elizabeth as her husband, and the appellant Carrie F. Ormsby as one of the next of kin.

At the time of said marriage, the statutes of Indiana provided as follows: "After the making of a will by an unmarried woman, if she shall marry, such will shall be deemed revoked by such marriage."

Said Elizabeth died possessed of about $12,000 in personal property and $500 in real estate, all of which belonged to her at the time of executing said will and agreement, excepting what may have been added by accumulations of income not expended, and by increase in value.

*F. P. Goulding & H. F. Harris*, for the appellee.

*H. C. Hartwell & F. H. Dewey, Jr.*, for the appellants.

W. ALLEN, J. No question is made that the agreement contained a power to Mrs. Bliss to appoint by will, and that a will executed by her after the marriage would have been a good execution of the power, and would have operated as such, and not as a will; and that, to make it effective, it would be necessary that it should be allowed in the Probate Court. See *Osgood* v. *Breed*, 12 Mass. 525; *Ela* v. *Edwards*, 16 Gray, 91; *Heath* v. *Withington*, 6 Cush. 497; *Holman* v. *Perry*, 4 Met. 492; *Parker* v. *Parker*, 11 Cush. 519.

Whether a power of appointment in an ante-nuptial contract can be executed before, as well as after, the marriage, depends upon the terms and construction of the agreement. In this case, the power to appoint by will before the marriage is clearly given. The provision that the marriage shall not work the revocation of the will executed prior to it shows that it was intended that the power might be executed before the marriage. The agreement and the will bear the same date, and were both executed on the day before the marriage, and the agreement provided, in effect, that the will should be a good execution of the power. Even if

the will had been made before the agreement, and not referred to in it, and the power had been general to appoint by will, the preëxisting will might have been a good execution of the power. *Boyes* v. *Cook*, 14 Ch. D. 53. *Logan* v. *Bell*, 1 C. B. 872. The question is whether the execution of the power by an appointment by will before the marriage was revoked by the marriage.

The difference between a will and an appointment by will in this case may seem very slight, but there is the material practical difference between the two, that a married woman may make an appointment by will by the common law, but cannot make a will except as authorized by recent statutes. The theoretical distinction is, that a will concerns the estate of the testator, and an appointment under a power that of the donor of the power. It is the exercise of a power of designation as to the estate of the donor, and is the same when given or reserved to the wife, as to her own estate, in an ante-nuptial contract between the parties intending marriage. *Ela* v. *Edwards, ubi supra. Bradish* v. *Gibbs*, 3 Johns. Ch. 523. Such a power can be given to be executed when sole or married, and can be executed by a married woman according to its terms, by deed, will, or otherwise. There can be no reason for the distinction that the execution, when sole, of a power to appoint by deed or will when sole or married, if by will should be revoked by marriage, but if by deed should not be revoked. The will operates in the same manner as the deed does, as the execution of a power, not as the disposition of an estate. It was at first held that the will could not be proved in the spiritual court, but treated in equity as an appointment. The difference between the execution of a power by will and by deed is, that the former must be by an instrument allowed in the Probate Court as executed in the manner of a will, and which is to be construed by the rules applicable to the construction of wills, and such an appointment is always revocable ; the latter must be by an instrument under seal, and may be irrevocable.

The reason given for holding that marriage is deemed to be a revocation of a woman's will, — that she thereby divests herself of the power of revoking it, and destroys the ambulatory character necessary to a will, — does not apply to an appointment by will. The woman has the same authority to execute the

power of revocation and appointment when married as when sole. The nature, and not the form, of the instrument, determines whether, at common law or under statutes, it is a will of which marriage is a revocation. So are the authorities.

In *Hodsden* v. *Staple*, 2 T. R. 684, there was an ante-nuptial agreement between the parties to a marriage, by which the woman had a power of appointment of her real estate by will. Before the marriage she made a will in favor of the man. The husband survived her, and the question arose between their respective heirs in an action of ejectment. The case was decided in favor of the heirs of the wife, on the ground that the legal title remained in her, and did not pass by the will. Lord Kenyon, C. J., said, that, while the will of a feme sole is revoked by marriage, " it is equally clear that, where an estate is limited to uses, and a power is given to a feme covert before marriage to declare those uses, such limitations of uses may take effect; and this is the rule even in a court of law." Ashhurst, J., expressed a doubt whether marriage would not revoke the will, but said that that question did not arise in the case, as the power did not give authority to appoint before marriage. *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534, was in equity, and the question of the validity of the same will as an execution of the power was directly in issue. It was held invalid, because the power was limited to a will made after marriage, and not upon the ground that the marriage was a revocation of the appointment.

In *Taylor* v. *Rains*, 7 Mod. 148, there was an agreement between persons intending marriage, which gave the woman power to appoint in writing or by will. She made a will before the marriage. It was held that, though the will could not be allowed in the spiritual court, it was a good appointment in equity.

*Logan* v. *Bell*, *ubi supra*, was a case of a marriage settlement, which gave the woman a power of appointment by deed, will, or codicil. After the settlement, but before the marriage, she made a codicil to her will, referring to the power. It was held a valid execution of the power, and not revoked by the marriage. Tindal, C. J., said: "Nor is there any doubt that, supposing the power in the settlement to extend to a codicil made after the settlement and before the marriage, the appointment by the codicil was not revoked by the marriage." There seems, therefore, to be no doubt

that a power to appoint by a codicil made before marriage may, by proper words, lawfully be conferred, and may, if duly executed, take effect notwithstanding the subsequent marriage.

*McMahon* v. *Allen*, 4 E. D. Smith, 519, was a case where a power in a marriage settlement to appoint by writing or by a last will or codicil contained these words: " The existing will and codicil to be deemed an appointment until the making of some other appointment." It was held that the will and codicil was a valid execution of the power, which was not revoked by the marriage. See also *Lant's appeal*, 95 Penn. St. 279.

The will, so far as it is in execution of the power of appointment contained in the agreement referred to, should be allowed; but there should be a qualified or limited allowance, as in *Holman* v. *Perry*, and *Heath* v. *Withington, ubi supra.*

*Ordered accordingly.*