OPINION.
Disney:
The question here is, of course, one of fact and, since each case of this character must be considered on its own facts, other decisions do not greatly assist. It should, however, be kept in mind under the principles laid down in United States v. Wells, 283 TJ. S. 102, that there is a general expectation of death which all entertain, and that such an expectation only is not sufficient to characterize a transfer as in contemplation of death. There is here, we think, no very serious contention that the decedent was in dangerous physical condition or contemplating death in the immediate future at the lime of the formation of the trust. The testimony of the physician attending her and acquainted with her condition for many years is positive to the effect that she did have recurrent digestive disorders, with symptoms of gall bladder trouble, but that there were long periods when these did not recur and in his opinion they did not relate to the cause of her death. All of the multitudinous details, which it is not considered necessary or practical here to set forth, indicate that the decedent was an unusually active woman for her age, participating in many varied activities, possessed of an optimistic disposition, and with an interest in life and its affairs. We have no hesitation in concluding from all the evidence that the condition of health a,nd the state of mind of the decedent at time of formation of the trust negative rather than support any idea of contemplation of any immediate prospect of death at that time. There is no evidence that the heart disease, which caused her death more than seven years later, had originated at the time of the formation of the trust. Even after the automobile accident in 1929, she continued to be a very active individual.
Kespondent’s principal contention, as stated by counsel at the hearing, is that the statements made by decedent’s son and daughter in an affidavit attached to the estate tax return as to decedent’s estate demonstrate that the obj ect of the trust was testamentary. It is undoubtedly true that in terms the language of the affidavit strongly tends to support this contention, for in the affidavit the two children depose that their mother on numerous occasions expressed her desire to dispose of her property in her lifetime to avoid the difficulties and uncertainties and expenses incident to the settlement of a decedent’s estate, especially in view of the fact that a large part of her property consisted of real estate, etc. These statements, if they came unexplained from the decedent, would very obviously demonstrate the *1025 soundness of respondent’s position. But they come from the son and daughter, whose testimony upon hearing giving their version of the matter is inconsistent with the affidavit they made about eight years after the transaction being considered here, and they are explained as prepared by the attorney with no consultation with the son or daughter of decedent as to their phrasing and were signed by the deponents with little regard to the facts. The phraseology was that of the attorney. The daughter did not read the affidavit at all because her brother had signed it, and the son explains that he signed it after scanning it hastily while on the way to the hospital for an operation, at a time when he was under business stress. Under such circumstances the statements are attributable largely to the attorney who drew the affidavit; and they are counterbalanced by the positive statements of the son, who was his mother’s business associate, that the object of the trust was not only that decedent wished to make a birthday present to her two children, but that she wished to rid herself of the work and trouble of the management of the estate in which she had been engaged for many years, and to make provision for her four brothers and sisters less troublesome than had been their appeals to her. The testimony of the attorney who drew the trust is positive to the effect that the object was the avoidance of business responsibilities, and the daughter testified as to the desire of decedent to make gifts. It is, of course, true that the son was already doing much the larger part of the work of management, but the estate was of such proportion that decedent’s part therein was still onerous. The fact that decedent was herself named as trustee would, of course, by itself, indicate that she did not altogether rid herself of such business responsibilities, but this is largely at least negatived by the fact that on the same day the trust was formed all the trustees gave the son a power of attorney in effect to manage the estate, while the decedent devoted herself largely to other interests. The fact also that the decedent retained much of the liquid assets, such as bonds and stocks, and did not put them into the trust, indicates that it was the troublesome part of the estate, that is, that part which required supervision, that was placed in the trust and of which the decedent divested herself. The evidence in this case is voluminous, consisting of a multitude of small details tending to cast light upon the intent in the formation of the trust, and the physical and mental condition of the settlor, and includes photographs of the settlor and moving pictures exhibited to the Member presiding at the hearing. It would serve no purpose, we think, to attempt to set forth more details than above. From a consideration of all of these details, we are convinced that the object of the trust was primarily the elimination of business worries and responsibilities from the settlor and secondarily the de *1026 sire to make gifts to ber children, (as well as minor gifts to her brothers and sisters and 20 percent of the net income for contributions to religious, educational, and/or charitable matters and to blood relatives), and that the trust was not set up in contemplation of death.
Although as above stated other cases are not highly helpful, the conclusion to which we come is consonant with the decision in First National Bank v. Welch, 24 Fed. Supp. 695, wherein it was found that the purpose of the trust was to relieve a husband of the management of securities. The fact that the two children did not get immediate possession of the portion of the property which eventually vested in them, the net income of which went primarily to the settlor for her life, does not demonstrate contemplation of death. The settlor parted with possession and beneficial interest. May v. Heiner, 281 U. S. 238; Reinecke v. Northern Trust Co., 278 U. S. 339.
We hold that the transfer here in question was not in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926.

Decision will be entered umder Bule 50.