*Decision will be entered under Rule 50.*

JOEL C. COHEN TESTAMENTARY TRUST, BY HAWAIIAN TRUST COMPANY, LTD., TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96231.   Promulgated October 29, 1940.

*Heaton L. Wrenn, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of deficiencies in income tax of the estate of Joel C. Cohen, deceased, for the years 1934, 1935, and 1936, as follows:

| | |
|---|---|
| 1934 | $34.41 |
| 1935 | 152.39 |
| 1936 | 445.27 |
| Total | 632.07 |

The questions in issue are (1) whether the decedent's estate in process of administration is taxable in 1934, 1935, and 1936 on the income from certain property which the decedent during his lifetime had con-

veyed in trust and, in the alternative, whether, if such income is includable in the gross income of decedent's estate, it is deductible by the estate as income distributed to a beneficiary in those years; and (2) whether the commissions received by the trustee of the trust estate pursuant to the provisions of the trust in the years 1934, 1935, and 1936 are includable in the gross income of the estate for those years.

The essential facts are contained in a written stipulation of facts, with appropriate exhibits, which is incorporated herein by reference.

The Hawaiian Trust Co., Ltd., petitioner herein, is an Hawaiian corporation, with its principal office located in Honolulu, Hawaii. It is the executor of the will of Joel C. Cohen, who died August 11, 1931, in San Francisco, California, being at the time a resident of Honolulu.

On September 14, 1926, Joel C. Cohen executed his last will and testament. After bequeathing certain articles of domestic and household use or ornament, jewelry, clothing, etc., and all the net proceeds of life insurance policies, to his wife, he gave, devised, and bequeathed all the rest, residue, and remainder of his estate to the Hawaiian Trust Co., Ltd., in trust to pay the income thereof to his widow for life, with remainders over.

On February 25, 1931, the decedent, Joel C. Cohen, executed a trust agreement in which he conveyed to the Hawaiian Trust Co., Ltd., as trustee, 5,000 shares of the capital stock of the Consolidated Amusement Co., Ltd., an Hawaiian corporation, to pay the income therefrom to him, the settlor, for life, and upon his death:

\* \* \* to administer the estate and to distribute the principal and income therefrom in accordance with the instructions given his testamentary trustee under the terms of his last Will and Testament, subject to the terms and provisions hereof which shall continue in force and subject to law.

It was further provided in the trust instrument that:

The Trustee shall receive as compensation for its services hereunder five per cent (5%) on the gross income derived from said trust estate and also two and one-half per cent (2½%) on the principal of said trust estate on the final payment of the same, either in cash or in kind and either in whole or in part at the termination of the trust or at any prior time.

\* \* \* \* \* \* \*

This agreement of trust cannot be revoked or amended by the Settlor alone but can be revoked or amended at any time during the Settlor's lifetime by the joint action of the Trustee, the Settlor and the Settlor's wife, or in case the Settlor's wife predeceases him or becomes incapable of acting by the joint action of the Trustee, the Settlor and Alan S. Davis of said Honolulu.

The trust agreement was never revoked or amended. The trustee administered the trust from the date of its creation. In accordance with the terms of the trust agreement it opened principal and income ledger accounts for the trust under the name of "Joel C. Cohen Trust",

which were carried through all of the taxable years involved. It paid the income of the trust, after the deduction of trustee's commissions, to the decedent during his lifetime and after his death it paid such income annually to the decedent's widow. The trustee's commissions for 1934, 1935, and 1936 amounted to $366.11, $322.98, and $278.65, respectively.

The decedent's will was admitted to probate and letters testamentary were issued to the Hawaiian Trust Co., Ltd., on September 24, 1931. The estate was in process of administration during all of the taxable years 1934, 1935, and 1936. Probation of the estate was completed in 1939 or 1940 and the residue of the assets was turned over to the Hawaiian Trust Co., Ltd., as trustee of the testamentary trust.

None of the securities which have ever been subject to the trust agreement of February 25, 1931, has been included in any inventory or in any accounts filed by the Hawaiian Trust Co., Ltd., as executor, with the Probate Court, nor were any of them included in the appraisal of assets of the estate made by the appraisers appointed by the Probate Court. No part of the assets of the estate or of the income thereof was distributed by the executor during the taxable years 1934, 1935, and 1936.

During the years 1934, 1935, and 1936 the Hawaiian Trust Co., Ltd., filed separate fiduciary tax returns for the decedent's estate in process of administration, and for the trust created by the trust indenture of February 25, 1931.

In the determination of the deficiencies herein the respondent has added to the income of the estate all of the income of the trust, without deduction therefrom of commissions paid to the trustee, and has not allowed any deduction therefrom of the amounts of trust income which were paid over to the widow.

Our first question is whether the trust created by the decedent under the trust indenture of February 25, 1931, in respect of the 5,000 shares of the capital stock of the Consolidated Amusement Co., Ltd., continued after his death as a separate tax entity so that the trust income is not taxable to the executor of the estate in process of administration.

Unquestionably it was the decedent's intention in executing the trust agreement to create a trust that should continue after his death. He made a completed conveyance of legal title to the trust *res* to the trustee and expressly directed the trustee:

\* \* \* to administer the estate and to distribute the principal and income therefrom in accordance with the instructions given his testamentary trustee under the terms of his last Will and Testament, subject to the terms and provisions hereof *which shall continue in force and subject to law.* [Italics supplied.]

It is a primary rule in the construction of trusts, as in the case of wills, that the intention of the settlor, if not forbidden by law, be carried out. In *Green* v. *Green*, 90 U. S. (23 Wall.) 486, it is said that:

Trusts are the mere creatures of confidence between party and party * * *. They are rights arising solely out of the intent of the party who created them, and therefore such intent could be the only guide in the execution of them.

See also *O'Neil* v. *Dreier*, 61 Fed. (2d) 598; *Syracuse Trust Co.* v. *Fuller*, 140 Misc. Rep. 918; 252 N. Y. S. 90.

The decedent had executed his will in 1926, several years prior to the creation of the trust, and had named his wife as life beneficiary of his residuary estate. A fair and reasonable construction of the trust agreement is that the decedent intended that she should likewise be the life beneficiary of the trust estate the same as of the residuary estate.

The decedent never made any changes in his will after creation of the trust estate. Upon his death the will became incorporated by reference as a part of the trust instrument in so far as it identified the persons who were to participate, and to the extent to which they were to participate, in the distribution of the remainder of the trust estate.

It has been held generally that it is not essential to the validity of a trust that it be fully contained in a single instrument, but it may be defined in one or more separate writings. See *Heermans* v. *Schmaltz*, 7 Fed. 566; *Roberts* v. *Taylor*, 300 Fed. 257; *Loring* v. *Palmer*, 118 U. S. 321; *Joy* v. *St. Louis*, 138 U. S. 1; *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390; *Adamson* v. *Black Rock Power & Irrigation Co.*, 297 Fed. 905; *Mayer* v. *American Security & Trust Co.*, 33 App. D. C. 391; affd., 222 U. S. 295. Where a will is referred to in a trust deed the effect is to make the words of the will a part of the trust deed except where inconsistent with the trust deed. *Hammett* v. *Farrar*, 29 S.W. (2d) 949.

The continuation of the trust after the decedent's death would not be open to question if the trust agreement of February 25, 1931, had named all of the beneficiaries and defined their respective interests in the trust estate both before and after the termination of the decedent's life interest. It is sufficient, we think, that the identity of those beneficiaries and the quantum of their several interests in the trust can be clearly determined from the trust indenture and the will to which it refers for that very purpose. There was no time either before or after the decedent's death when there were not designated beneficiaries of the trust and when the trustee was not under specific instructions as to the administration of the trust estate.

There are many cases decided by the various state courts which support the petitioner's contentions herein. In *Syracuse Trust Co.* v. *Fuller, supra,* the settlor conveyed certain personal property in trust, reserving the income therefrom for life, with the remainder over to such persons as she might appoint in her will, or, in default of such appointment, to her heirs at law. She also reserved the power to revoke the trust. Thereafter, she executed a will in which she made a number of specific bequests and directed that the residue of her estate be distributed to certain named relatives. The court held that the persons named in the residuary clause of the will were entitled to take the remainder of the trust property as beneficiaries of the trust estate and that such trust property did not pass to the executor, but remained in the hands of the trustee for distribution. In its opinion, at page 100, the court said:

* * * I am of the opinion, however, that the testatrix did not intend the will to operate as an execution of the power contained in the trust agreement; that she executed that power under the trust agreement; and that she merely designated the beneficiaries and fixed their shares in the residuary clause of her will, and intended that such clause should be read into the trust agreement. In other words, she intended that her appointees, namely, the persons mentioned in the residuary clause of the will, were to take from the older estate, which is the trust estate. *Matter of Franklin Trust Co.,* 103 Misc. Rep. 143, 146, 169 N. Y. S. 812; *Guaranty Trust Co.* v. *Halsted,* 245 N. Y. 447, 459, 157 N. E. 739.

To the same effect is *United States Trust Co. of New York* v. *Chauncey,* 32 Misc. Rep. 358; 66 N. Y. S. 563.

The Supreme Court of the State of Florida reached a like result in *Hamilton* v. *Florida National Bank of Jacksonville,* 151 So. 409, on facts almost identical with those in the instant case. There, certain property was conveyed to a trustee to pay the income to the settlor for life and upon her death to distribute the remainder of the trust property:

* * * in accordance with the provisions of the last will and testament of the Settlor, and in default of appointment by last will and testament, the principal shall be made over to her next of kin under the laws of Pennsylvania now in existence * * *

In a previously executed will, which was duly probated, the settlor made a number of specific bequests and left the "rest, residue and remainder" of her property to certain named persons. The court held that the residuary clause of the will was a valid execution of the power of appointment reserved in the trust deed, saying:

Where the owner of property transfers it in trust for the owner for life, reserving a power of appointment to designate the beneficiaries of the estate after the death of the settlor, such reserved power of appointment may be executed by the provisions of a pre-existing will of the settlor which takes effect as of the death of the testator, if that is the intent of the settlor

as shown by the consistent provisions of the trust deed and of the will, and such provisions are not illegal. The lawful intent of the settlor-testator, as shown by the trust deed and the will, is controlling.

\*       \*       \*       \*       \*       \*       \*

In *Matteson* v. *Goddard*, 17 R. I. 299, 21 A. 914, it is stated that "there is one way, however, in which it may be that a power can be executed by a pre-existing will, namely, where the power is created or reserved with the intent that it shall be so executed, in case the will is left to take effect." \* \* \*

In *Burkett* v. *Whittemore*, 36 S. C. 428; 15 S. E. 616, it was said:

\* \* \* This seems to be the settled doctrine. "A general power of appointment may well be exercised by a will executed previously to the creation of the power, and that, too, by a mere residuary gift. \* \* \* And it seems that a limited power of appointment may also be well exercised by a will executed previously to the creation of the power, if there be a sufficient reference to the power or the subject-matter thereof." See the late admirable treatise of Mr. Farwell on Powers (pages 185, 188, and authorities). \* \* \*

See also *Osgood* v. *Bliss*, 141 Mass. 474; 6 N. E. 527.

It was said in *Stone* v. *Forbes*, 189 Mass. 163, 75 N. E. 141, that:

It is settled in this commonwealth that a general power of appointment is well executed, in the absence of any thing to show a contrary intention, by a general residuary clause in the will of the donee of the power. *Amory* v. *Meredith*, 7 Allen, 397; *Willard* v. *Ware*, 10 Allen, 263; *Bangs* v. *Smith*, 98 Mass. 270; *Sewall* v. *Wilmer*, 132 Mass. 131; *Cumston* v. *Bartlett*, 149 Mass. 243, 21 N. E. 373; *Hassam* v. *Hazen*, 156 Mass. 95, 30 N. E. 469. And, whatever may have been the case formerly, that is now the law in England. *Airey* v. *Bower* (1887) 12 A. C. 263; *Boyles* v. *Cook* (1880) 14 Ch. 53. And both in this country and in England the fact that the power is created after the execution of the will does not prevent the will from operating as an execution of the power. *Willard* v. *Ware*, 10 Allen, 263; *Osgood* v. *Bliss*, 141 Mass. 474, 6 N. E. 527, 55 Am. Rep. 488; *Airey* v. *Bower, supra.* \* \* \*

The decedent was, of course, free to change his will at any time during his lifetime and to name other beneficiaries of his residuary estate, as well as the trust estate. Appointments by will speak from the death of the testator. *Loring* v. *Massachusetts Horticultural Soc.*, 171 Mass. 401; 50 N. E. 936. Also, with the consent of his wife and the trustee, the decedent was free to revoke the trust at any time during his lifetime. However, the rule is too well established to require a citation of authorities that a power of revocation in a settlor does not of itself render a trust invalid. The revocability of the trust is not germane to the question here under consideration. We are not concerned either with the includability of the value of the trust property in the decedent's estate for estate tax purposes or the liability of the decedent for income tax on the income of the trust during his lifetime. Our only question is whether the executor of the decedent's estate in process of administration is liable to income tax on the income of the trust.

The cases of *Helvering* v. *Hallock*, 309 U. S. 106, and *Estate of John S. Conant*, 41 B. T. A. 739, which the respondent cites in his brief, are not in point. They are both estate tax cases and involve the question of whether certain trust conveyances were "intended to take effect in possession or enjoyment at or after death." Whether or not the value of the trust property here involved was included in decedent's gross estate for estate tax purposes (and we may assume that it was if the estate was taxable) is not in any way determinative of the question before us. The revenue acts contain specific statutory provisions for including in the gross estate for estate tax purposes the value of property which a decedent may have transferred in trust during his lifetime, although technically such property does not pass at death and does not fall into the estate for distribution by the executor. See *United States* v. *Field*, 255 U. S. 257; *Helvering* v. *Hallock*, *supra*. It was held in *United States* v. *Field*, *supra*, that property passing under a general power of appointment exercised by the donee of the power in her will was not a "legal asset" of the estate and was not subject to distribution by the executor as part of the estate of the donee of the power.

In determining the tax liability here involved consideration must be given to the fact that the executor of the decedent's estate, the Hawaiian Trust Co., Ltd., which was also trustee of the trust estate and had the legal duty of administering both estates, did not regard the trust property as belonging to the estate and did not include the value of it in any of the accounts which were submitted to the Probate Court. The trustee has at all times administered the trust fund as a separate fund in accordance with the provisions of the trust agreement and none of the interested parties, so far as the evidence shows, has ever made any objection to the administration of either of the estates.

For the reasons set forth, we are of opinion that the trust estate created by the decedent under the trust agreement of February 25, 1931, continued as a valid trust entity after the decedent's death and that the income therefrom is not taxable to the decedent's estate in process of administration.

In view of our ruling on the principal question in issue, it is not necessary for us to consider other issues raised as to the deductibility of the trust income that was paid out to the beneficiary during the taxable years involved, or the deductibility of the trustee's commissions which were taken out of the trust income in those years.

Reviewed by the Board.

*Decision will be entered under Rule 50.*